IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SAMANTHA J. LAND, n/k/a SAMANTHA J. DARE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 06-3278 ) |
| BARTLOW BROTHERS, INC. and BARTLOW BROTHERS, INC. HEALTH BENEFIT PLAN, | ) ) ) ) |
| Defendants. | ) |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendants' Motion for Summary Judgment and Memorandum in Support (d/e 24) (Motion for Summary Judgment). At all relevant times, Plaintiff Samantha Dare was an employee of Defendant Bartlow Brothers, Inc. (Bartlow Brothers) and a participant in Defendant Bartlow Brothers, Inc. Health Benefit Plan (the Plan). Dare's two-count Complaint (d/e 1) alleges that her employment was wrongfully terminated to prevent her continued receipt of health insurance benefits, in violation of the Employee Retirement Income Security Act (ERISA). See 29

U.S.C. § 1140.  For the reasons set forth below, the Motion for Summary Judgment is allowed.

## BACKGROUND

Dare was hired by Bartlow Brothers in a general clerical position on October 14, 2002, a position she held until her termination on July 15, 2005.  Dare's job duties were to apply payments received in the mail to customer accounts, to generate invoices based on information from shipping, to file invoices, and to answer the telephone.  Dare was trained by Kim Paisley, n/k/a Kim Thornton (Thornton), who held the senior clerical position during Dare's employment with Bartlow Brothers.  Thornton was responsible for payroll, accounts payable, inventory, balancing the company checkbook, postings at the end of the month and end of the year, and various other duties assigned by Dan Reynolds, the President of Bartlow Brothers.  Thornton was the only Bartlow Brothers' employee who was trained on the computer system regarding these duties.  Prior to July 30, 2004, Carl Wiggins, Comptroller of Bartlow Brothers, supervised both Dare and Thornton. Thornton testified that, after Wiggins left, Reynolds became her immediate supervisor.

In February 2004, Dare made a general statement in the Bartlow

Brothers' front office area that she had been diagnosed with multiple sclerosis (MS). Dare subsequently underwent treatment, including a single visit to the Mayo Clinic in Minnesota. Dare's medical bills were paid to a large extent by her employer-provided health insurance. Dare remained physically able to perform her job duties and did not miss excessive amounts of work for doctor visits.

Robert Phillips, Sales Manager at Bartlow Brothers, was responsible for checking invoices entered by Dare. According to Phillips, Dare made numerous mistakes in entering her accounts. Thornton testified that she had to correct Dare's job performance at least once a week. According to Thornton, Dare did not react well when someone would attempt to correct her work. Thornton also testified that Dare would meddle into work-related matters that did not concern her. Dare testified that Thornton never complained to her about the way Dare was performing her work or about her behavior. According to Dare, she and Thornton "didn't have a lot of problems." Plaintiff's Response to Defendants' Motion for Summary Judgment (d/e 26) (Plaintiff's Response), Attachment 1, Ex. A, Deposition of Samantha Dare, p. 21.

Thornton testified that she complained to Reynolds about Dare on

3

several occasions. Thornton testified that she eventually told Reynolds that she did not know how much more she could take. According to Thornton, on June 24, 2005, she and Dare had a severe confrontation after which Thornton had to leave the plant to cool down. Thornton testified that, in July 2005, she and Dare had another confrontation which again caused Thornton to leave the plant to cool down. Dare testified about a July event as well. According to Dare, two days before she was terminated, she asked Thornton a question and Thornton became angry, started cussing, and threw her chair back. According to Dare, after this outburst, Thornton left for lunch, and Dare never determined the cause of Thornton's anger. Thornton testified that she complained to Reynolds about Dare after this incident.

According to Thornton, she indicated to Reynolds that she might leave Bartlow Brothers if he did not fire Dare. Plaintiff's Response, Attachment 4, Ex. D, Deposition of Kim Paisley n/k/a Kim Thornton, p. 9. Thornton testified that Reynolds was concerned about losing her and indicated that "something was going to have to be done." Id. According to Thornton, at the time Dare was terminated, Thornton was seriously considering leaving Bartlow Brothers, although she does not think that Reynolds knew that she

4

was looking for other jobs.

Dare's employment with Bartlow Brothers was terminated on Friday, July 15, 2005, by Reynolds.  Reynolds was responsible for hiring and firing employees, including Dare.  It is undisputed that, the weekend prior to her termination, Dare went to the hospital for tests including an Upper Gastrointestinal test.  According to Dare, on Wednesday, July 13, 2005, she told Reynolds that her doctors informed her that she needed to have surgery.  It is undisputed that Reynolds alone made the decision to terminate Dare's employment.  Reynolds testified that he decided to fire Dare because he was afraid that he was going to lose Thornton if he did not.  According to Reynolds, Thornton had told him that she did not know how much longer she could continue to work with Dare, based on a combination of things, including Dare's "not caring attitude."  <u>Plaintiff's Response</u>, Attachment 2, Ex. B, <u>Deposition of Dan Reynolds</u>, p. 28.  Reynolds testified that he had observed Thornton attempt to correct Dare's work on several occasions, to which Dare would either laugh it off or become defensive.

At approximately 3:00 p.m. on July 15, 2004, Reynolds called Phillips and Dare into a back room.  Reynolds informed Dare that she was being fired.  According to Dare, Reynolds told her that "it had nothing to do with

5

[her] job performance" but that Thornton could not work with her anymore and so she was being fired. Plaintiff's Response, Attachment 1, Ex. A, Deposition of Samantha Dare, p. 68. Dare testified that she was in shock at the news that she was being fired because she had never been fired from a job, she felt she had been loyal to the company, and she and Thornton "didn't fight like that." Id.

During Dare's employment, Bartlow Brothers had in place an Employee Handbook, dated November 1, 1994. See Plaintiff's Response, Attachment 6, Ex. F.[1] While Dare was employed by Bartlow Brothers, she was verbally reprimanded, but she was never reprimanded in writing. Article VII of the Handbook specifically addresses employee discipline as follows: "Violations of Bartlow Brothers standards will result in one of the following forms of disciplinary action: verbal warning, written warning, suspension or termination, except in cases serious enough to warrant immediate termination." Id., p. 16. The Handbook further provides as follows:

If disciplinary action is needed, it will be handled as follows:

---

[1]The page numbers assigned by the Court's electronic filing system do not correspond with the Handbook's internal page numbering. For consistency, the Court will cite to the document by the page numbers assigned by the electronic filing system.

      a.    First, a verbal warning.
      b.    Second, written warning with a signed copy in the personnel file.
      c.    Third, a suspension or termination at discretion of the management.

To arrive at a decision for proper action, the following will be considered:

- The seriousness of the infraction.
- The past record of the employee.
- The circumstances surrounding the matter.

Id.

The Handbook sets out nine examples of conduct that might result in immediate discharge, including theft, carrying weapons, use or possession of illegal drugs, and interfering with the performance of fellow employees or customers. Id., p. 17. It is undisputed that Dare did not commit any of these nine enumerated types of misconduct. The Handbook also sets out examples of "less serious conduct which shall be subject to disciplinary action as set forth above in this Article VII," including insubordination, absenteeism, unsatisfactory performance, and disrespect toward fellow employees. Id., p. 17-18. Defendants concede that "[v]erbal warnings, written warnings, and suspension are required before termination 'except in cases serious enough to warrant immediate termination.'" Plaintiff's

7

Response, p. 8, Additional Material Fact No. 13; Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment and Memorandum in Support (d/e 27) (Defendants' Reply), p. 1. It is undisputed that Dare never received a written warning or a suspension. Reynolds testified that he did not follow progressive discipline in Dare's case because he had verbally spoken to Dare, and the matter had progressed to a serious situation with the threat of losing Thornton, an employee whom he deemed to be more valuable than Dare. Plaintiff's Response, Attachment 2, Ex. B, Deposition of Dan Reynolds, p. 36-37.

Dare asserts that she was terminated because Reynolds no longer wanted to pay her high medical expenses. It is undisputed that the Plan was subject to renewal on August 1, 2005. On July 6, 2005, Reynolds met with representatives from the Plan's third-party administrator, HCH Administration, to discuss insurance rates, as he did every year. Larry Hardesty, a broker with Mid Illinois Insurance Services, and Kevin Nester, a client consultant with HCH Administration, attended the meeting as well. It is undisputed that, at no time during the July 6, 2005, meeting did the men discuss Dare, her health, or any claims she had submitted. It is also undisputed that, at no time through July 15, 2005, did Hardesty or Nester

8

discuss the dollar amount of Dare's claims with anyone at Bartlow Brothers, nor did they, at any time, make any representations to Bartlow Brothers that its insurance premiums would decrease if Dare were fired.  When it is determined that an individual claimant is at risk for exceeding specific deductible amounts in the upcoming plan year, Nester would discuss those claimants with Reynolds, without revealing the claimant's identify.  It is undisputed that no such determination was made regarding Dare, and as a result, Nester never discussed Dare's claims with Bartlow Brothers.  Bartlow Brothers renewed its health insurance policy effective August 1, 2005.  The insurance premiums increased, as they had each year.

Dare alleges that she was fired in violation of 29 U.S.C. § 1140 (commonly referred to as ERISA § 510), which provides as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . .  or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

Defendants contend that they are entitled to summary judgment based on Dare's failure to exhaust administrative remedies.  In the alternative, Defendants contend that Dare is unable to establish intentional interference

with ERISA benefits.

## ANALYSIS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact and that judgment as a matter of law is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). When a properly supported motion for summary judgment has been made, the party opposing summary judgment may not merely rest on the pleadings but must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "A party must present more than mere speculation or conjecture to defeat a summary judgment motion." Liu v. T & H Machine, Inc., 191 F.3d 790, 796 (7th Cir. 1999). The Court must consider the evidence in the light most favorable to the non-moving party, here Dare, and draw all reasonable inferences in her

favor. See Anderson, 477 U.S. at 255.

    A.    Exhaustion of Remedies

As an initial matter, the Court must address Defendants' claim that Dare failed to exhaust her administrative remedies as required prior to filing suit alleging an ERISA violation. Defendants rely primarily on Zhou v. Guardian Life Ins. Co. of America, which cautions that "[a]s a pre-requisite to filing suit, an ERISA plaintiff must exhaust his internal administrative remedies. This requirement furthers the goals of minimizing the number of frivolous lawsuits and enables the preparation of a more complete factual record for judicial review." Zhou, 295 F.3d 677, 679 (7th Cir. 2002) (internal quotations and citations omitted). Dare concedes that she did not exhaust the administrative remedies available under the Plan, but asserts that her failure should be excused by the alleged futility of further appeal. The Seventh Circuit, in Zhou, recognized that an exception to the exhaustion requirement applies when further administrative appeal is futile. Id. at 680.

In the instant case, the Plan provides a process for appeals of adverse benefit determinations, but does not set out a method to pursue claims of discrimination. See Plaintiff's Response, Attachment 3, Ex. C, p. 24-28.

11

The Plan expressly advises as follows: "if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal Court." Id., p. 50.  Dare identifies Nauman v. Abbott Laboratories, 2005 WL 1139480 (N.D. Ill. Apr. 27, 2005), and Szymanska v. Abbott Laboratories, 1994 WL 118154 (N.D. Ill. Mar. 29, 1994), as factually similar cases.  The Court finds these cases to be persuasive.  The Nauman and Szymanska Courts excused exhaustion on futility grounds in § 510 cases where the applicable plans had a clear procedure for challenging the denial of benefits, but no language setting out a method to pursue claims of discrimination due to past use of benefits or interference with the future use of benefits and included a passage advising an employee who is discriminated against to file suit in federal or state court.  The Court finds that exhaustion would be similarly futile in the instant case.  The applicable Plan provides administrative remedies that pertain to disputes arising out of claims for benefits, not to discharge. Defendants' request for summary judgment based on Dare's failure to exhaust administrative remedies is denied.

B.    Intentional Interference with Benefits

In the alternative, Defendants assert that Dare is unable to establish intentional interference with her ERISA benefits. "The loss of benefits to an employee as a result of an employer's action is not, by itself, sufficient to prove a violation of § 510. The employer must have the specific intent to deprive an employee of his plan rights." Isbell v. Allstate Ins. Co., 418 F.3d 788, 796 (7th Cir. 2005). Ultimately, Dare must "show that a desire to frustrate attainment or enjoyment of benefit rights contributed toward the employer's decision and can avoid summary judgment only if the materials properly before the district court, construed sympathetically, allow for such a conclusion " Id. (internal quotations and citation omitted). Dare may establish a violation of § 510 under either a direct or indirect method. Id. Direct evidence consists of evidence that proves a claim without the need for inference or presumption. Troupe v. May Dept. Stores Co., 20 F.3d 734, 736 (7th Cir.1994). Dare has not presented any direct evidence; rather, in her Response, Dare relies on the indirect method of proof. Plaintiff's Response, p. 15-19.

To establish a prima facie case on her § 510 claims, Dare must demonstrate that she: (1) belongs to the protected class; (2) was qualified

for her position; and (3) was discharged under circumstances that provide some basis for believing that the prohibited intent to retaliate or to prevent the use of benefits was present. <u>Isbell</u>, 418 F.3d at 796. As in all cases involving the indirect method of proof, if the plaintiff succeeds in establishing a prima facie case, defendant must present a non-discriminatory reason for its actions. If it does so, the plaintiff bears the burden of proving that the stated reason is a pretext. The Court, however, need not "determine whether a plaintiff has established a prima facie case where a defendant has advanced a legitimate, nondiscriminatory reason for its action." <u>Id</u>. When a defendant proffers a legitimate reason for the employment action that is unrelated to depriving the employee of benefits, the inquiry ends unless the employee can show that the proffered reason is a pretext for improperly denying benefits. <u>Zehrung v. United Auto Workers Local 663</u>, 2008 WL 687313, *2 (7th Cir. Mar. 13, 2008). "A pretext . . . is a deliberate falsehood. An honest mistake, however dumb, is not, and if there is no doubt that it is the real reason it blocks the case at the summary-judgment stage." <u>Forrester v. Rauland-Borg Corp.</u>, 453 F.3d 416, 419 (7th Cir. 2006) (internal citations omitted).

    Defendants assert that Dare was fired because Reynolds believed that

14

Thornton would quit if he did not terminate Dare. Dare contends that she can establish that this reason is pretextual based on the timing of her termination, Reynolds' comments about the cost of health care, and Reynolds' failure to follow established disciplinary procedures. The Court disagrees.

Dare relies heavily on Hirsch v. National Mall & Service, Inc., in which the widow of a terminated employee sued the employer and others alleging, among other things, a violation of § 510 of ERISA. Hirsch, 989 F.Supp. 977 (N.D. Ill. 1997). Hirsch began his employment with the defendants in 1962. In the early 1990s, he was diagnosed with non-Hodgkins lymphoma. The defendants' controlling officers were aware of his condition. The evidence at summary judgment revealed that, in 1994, the Hirsch defendants were aware of and concerned about their rising health insurance premiums and that this concern was amplified by the fact that the company's growth was slowing. Defendants' controlling officers discussed the fact that Hirsch's health care costs may have been a factor in driving up insurance costs. In May 1994, defendants were informed that their health premiums for the next year would increase by ten to twelve per cent. In July 1994, defendants' controlling officers calculated and discussed how much

15

the company would save by terminating Hirsch, including the amount that would be saved by not having to pay for his health care. In late July or early August of 1994, Hirsch's employment was terminated, purportedly based on the fact that there was no further need for someone to fill his position. Based on the evidence set forth above, the Hirsch Court determined that the plaintiff met his burden on the specific intent requirement of the prima facie case. The Court relied on the same facts in determining that the plaintiff had met his burden on the issue of pretext. The Court denied defendants' request for summary judgment, stating that, at a minimum, an issue of fact existed about whether Hirsch was actually fired because his health care expenses were becoming a financial burden to defendants at a time when the company was already economically vulnerable. Id. at 984.

    The instant case is distinguishable from Hirsch in that there is no evidence of any belief by Reynolds that Dare's health care costs were a factor in driving up insurance costs. Defendants admit that, prior to July 15, 2005, Reynolds commented to Dare about the high cost of health insurance and the fact that there were employees with illnesses costing the company money. See Answer (d/e 5), ¶ 12. According to Dare, prior to her termination, she had conversations with Reynolds regarding an employee

who had been diagnosed with cancer. Dare asserts that Reynolds told her that the cancer treatments had cost Bartlow Brothers a lot of money and that Bartlow Brothers might have to terminate its insurance coverage because of the high costs. Dare, however, has presented no evidence that she was a high insurance risk, that her condition would cause Bartlow Brothers' insurance premiums to increase, or that Reynolds believed that her condition would cause Bartlow Brothers' insurance premiums to increase. Indeed, the record reveals that, at the time of her termination, Dare was leading a normal life and did not take excessive time off of work for doctors appointments. "The only concern in reviewing an employer's reasons for termination is the honesty of the employer's beliefs." Forrester, 453 F.3d at 419 (internal quotations and citation omitted).

Similarly, while Dare was terminated shortly after Reynolds met with Nester and Hardesty, the record is clear that these men did not discuss Dare, her health, or any claims she had submitted. Additionally, they did not make any representations that premiums would decrease if Dare were to be fired. Dare's arguments relating to the lack of progressive discipline are equally unavailing. Dare does not dispute that Thornton was a valuable employee. Thornton's testimony that she indicated to Reynolds that she

17

might leave Bartlow Brothers if he did not fire Dare is unrefuted.  It is undisputed that verbal warnings, written warnings, and suspension are not required in cases that are serious enough to warrant immediate termination. Reynolds testified that he deemed the threat of losing Thornton to be serious enough to warrant Dare's immediate termination.  Reynolds' belief need not be correct, it need only be honestly held.  Dare fails to identify facts sufficient to create a triable issue on the question of pretext. Defendants are, therefore, entitled to summary judgment on each of Dare's claims.

THEREFORE, Defendants' Motion for Summary Judgment and Memorandum in Support (d/e 24) is ALLOWED.  Summary judgment is granted in favor of Defendants and against Plaintiff Dare.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   April 10, 2008

      FOR THE COURT:

                                                    s/ Jeanne E. Scott
                                                     JEANNE E. SCOTT
                                    UNITED STATES DISTRICT JUDGE